IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIT UW, LTD., <br> The Sole Corporate Capital Provider <br> For Lloyd's Syndicate 2987, the Sole <br> Lloyd's Syndicate Subscribing to <br> Lloyd's Policy No. RTS000282, <br> <br> Plaintiff, <br> v. <br> <br> TRIPAR, INC., and DAVIS <br> RUSSELL REAL ESTATE AND <br> MANAGEMENT, LLC, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 15 C 5866 <br> <br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Brit UW, Ltd. filed a two-count complaint against defendants Tripar, Inc. ("Tripar") and Davis Russell Real Estate and Management LLC ("Davis Russell"), seeking a declaratory judgment that it has no duty to indemnify Tripar for damages awarded to Davis Russell in its lawsuit against Tripar (the "Underlying Action") because: (1) the events that led to the Underlying Action are not covered because they do not qualify as an "occurrence" under Tripar's insurance policy (Count I); and (2) Tripar did not notify plaintiff of the lawsuit until several months after summary judgment was awarded to Davis Russell (Count II). On December 10, 2015, Davis Russell filed a counter-claim against plaintiff, seeking a declaratory judgment that plaintiff is: (1) required to indemnify Tripar for the Underlying Action; (2) required to reimburse Davis Russell for losses resulting from plaintiff's delay; and (3) required to reimburse Davis Russell for additional costs resulting from the damage at issue in the Underlying Action (Count I) and that Davis Russell has satisfied its obligations under Tripar's policy with plaintiff (Count II). Having failed to timely answer or appear, Tripar is in default. On August 19, 2016,

plaintiff filed the instant motion for summary judgment pursuant to Fed. R. Civ. P. 56, and on September 30, 2016, Davis Russell also filed a motion for summary judgment. For the reasons discussed below, plaintiff's motion for summary judgment is granted and Davis Russell's motion for summary judgment is denied.

## BACKGROUND[1]

On August 29, 2012, Davis Russell hired Tripar, a general contractor, to renovate a 12-unit apartment building. The entire roof was to be replaced by a roofing subcontractor as part of the renovations. Davis Russell drafted a Professional Services Agreement ("PSA") that governed the project. The agreement required Tripar to do the following: (1) obtain workers compensation, employers liability, commercial general liability ("CGL"), and automobile insurance; (2) provide a certificate of insurance ("COI") evidencing such coverage; and (3) identify Davis Russell as an "additional insured" on the policies. Tripar's insurance broker, who was not authorized to act on behalf of plaintiff, prepared a COI reflecting that a CGL and Auto Liability policy was issued to Tripar by plaintiff for the period of August 4, 2012, to August 4, 2013 (the "Tripar Policy"), and listing Davis Russell as an "additional insured." The COI was clear that it was not issued by plaintiff and that it did not alter or amend coverage under the policy. The COI included the following relevant language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

---

[1] The following facts are taken from the parties' Local Rule 56.1 statements.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed.

As for the coverage provided by the Tripar Policy, it contained the following provisions:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

The Policy required the insured (Tripar) to give notice of an "occurrence" or "suit" "as soon as practicable. Specifically, the Policy provides:

2. Duties in the Event of Occurrence, Offense, Claim or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or offense which may result in a claim . . . .

b. If a claim is made or "suit" is brought against any insured, you must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" . . . .

3

Finally, the Tripar Policy defines "occurrence" to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it." Davis Russell did not obtain any additional insurance for the project.

Tripar was working on the roof of Davis Russell's apartment building on November 6, 2012, and, in anticipation of rain, covered the roof with weighted tarps. The weights were ineffective, however, and the tarps blew off, exposing the building to water damage. Tripar failed to complete the roof (and ultimately abandoned the project), causing further deterioration to the roof and damage to the hallways, ceilings, and walls of the building. Tripar also failed to properly install the rubber roof membrane, which had to be replaced. On April 18, 2013, water leaked into the building again. Davis Russell notified Tripar of the leak and Tripar installed missing gutters and downspouts.

On September 6, 2013, Davis Russell sent an email to Tripar's insurance broker identifying three separate incidents of property damage to the apartment building: (1) Tripar's and/or its subcontractor's failure to properly cover the roof on November 6, 2012, which resulted in water leaking into the building; (2) Tripar's and/or its subcontractor's failure to properly install the rubber roof membrane, damaging it; and (3) additional water damage due to the April 18, 2013, leak. Tripar's insurance broker notified plaintiff of Davis Russell's claim against Tripar on September 17, 2013. Plaintiff assigned McLarens Global Claim Services to investigate the claim. During the next several months, McLarens inspected the property and met with representatives from Tripar and Davis Russell as part of its investigation.

On November 3, 2014, a Tripar employee informed McLarens that Davis Russell had filed a lawsuit against Tripar in the Circuit Court of Cook County (the Underlying Action) and that a default had been entered against Tripar. Tripar failed to provide McLarens with information regarding the lawsuit despite McLarens' request. McLarens learned independently that Davis Russell filed the Underlying Action on April 26, 2013, alleging breach of contract and fraud. Tripar filed an answer and counterclaim on August 27, 2013, but then failed to respond to Davis Russell's Requests to Admit or do much else to defend against the suit or pursue its counterclaim. Consequently, the trial court granted Davis Russell's motion to deem all of its requests admitted. Based on those admissions, Davis Russell filed an unopposed motion for summary judgment on May 9, 2014. Three days later, the trial court granted summary judgment in Davis Russell's favor in the amount of $265,625.29 in damages, plus $14,076.17 in attorney's fees.

Plaintiff subsequently learned that Tripar did not report the Underlying Action to its insurance broker when it was filed because it hoped to resolve the lawsuit without involving its insurer. Davis Russell did not report the Underlying Action to Tripar's insurer because it considered the lawsuit to be a contractual issue separate from the insurance claim and believed that, as an "additional insured," it could file a claim directly. As a result, plaintiff did not learn of the Underlying Action until more than eighteen months after it was filed and nearly six months after summary judgment was granted.

**DISCUSSION**

**I.      Legal Standard**

Both parties have moved for summary judgment. A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir. 1990). In doing so, the non-movant cannot simply show some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, *2 (N.D. Ill. March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 4752 U.S. 574, 586 (1986)). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Green v. Carlson, 826 F.2d 647, 650 (7th Cir. 1987); see also Fisher v. Transco Services–Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992). Summary judgment is inappropriate when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II.      Analysis**

The construction of an insurance policy and any determination of the rights and obligations under it are questions of law for the court and are appropriate for disposition on summary judgment. Cent. Illinois Light Co. v. Home Ins. Co., 213 Ill.2d 141, 153 (2004). When construing the language of an insurance policy, the primary goal is to ascertain and give

effect to the intentions of the parties as expressed by the words of the policy. Id. To determine the meaning of the wording of the policy and the intent of the parties, the policy must be construed "as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purpose of the entire contract." Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill.2d 90, 108 (1992). The construction given to an insurance policy should be natural and reasonable, and if the "words in the policy are plain and unambiguous, they will be afforded their plain, ordinary meaning and be applied as written." Valley Forge Ins. Co. v. Swiderski Elecs., Inc., 359 Ill. App. 3d 872, 883 (2d Dist. 2005). If "the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed strictly against the drafter of the policy and in favor of coverage." Id. at 884. But the court "will not strain to find ambiguity in an insurance policy where none exists." Travelers Ins. Co. v. Eljer Mfg., Inc., 197 Ill.2d 278, 293 (2001) (citations omitted).

### A. The Duty to Indemnify

As an initial matter, in determining whether plaintiff has a duty to indemnify, the court must apply the substantive law of the forum state. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir 2000). The forum state in this case is Illinois; therefore, under Illinois choice of law principles, insurance contracts are construed according to the law of the state with the "most significant contacts" with the policy. Id. Because the parties agree that Illinois law governs interpretation of the policy in question, the court proceeds under the same assumption.

Plaintiff argues that it does not have a duty to indemnify Tripar in the Underlying Action for two reasons: (1) because the events that gave rise to the Underlying Action do not fall within

plaintiff's insurance agreement; and (2) because Tripar did not provide notice of the Underlying Action as required by its policy with plaintiff. Plaintiff is obligated to indemnify Tripar only for liability incurred in the Underlying Action if "[Tripar's] activity and the resulting loss or damage *actually* fall within the CGL policy's coverage." Outboard Marine, 154 Ill.2d at 128 (emphasis in original). The insured must first prove that the loss is covered by the policy. Travelers Pers. Ins. Co. v. Edwards, 2016 IL App (1st) 141595, ¶ 22. Once that burden is met, the insurer must prove that the loss is "limited or excluded by a contract provision." Id.

In its motion for summary judgment, Davis Russell argues, briefly, that it is "clear" from the insurance policy that Davis Russell is an "additional insured" and it is "equally clear" that there were "occurrences under the Policy triggering coverage." Whether Davis Russell is an "additional insured" will be discussed below. First, the court will examine the policy to determine whether "occurrences" did indeed trigger policy coverage.

The Tripar Policy applies to "bodily injury" and "property damage" that is caused by an "occurrence." The Policy defines "occurrence" as, "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policy does not define "accident," but Illinois courts define it as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." Viking Const. Mgmt., Inc. v. Liberty Mut. Ins. Co., 358 Ill. App. 3d 34, 42 (1st Dist. 2005). Illinois courts generally recognize that the natural and ordinary consequences of an act are neither an accident nor an occurrence. Nautilus Ins. Co. v. JDL Dev., IX, LLC, 2012 WL 1156917 at *4 (N.D.Ill. Apr. 4, 2012). Under this theory, defective construction resulting in damage to the structure does not constitute an accident or occurrence.

Id. Further, it has been generally held that a CGL policy will not cover a suit for breach of contract, and there is no occurrence when a subcontractor's defective workmanship necessitates removing and repairing work. Id.; see also Pekin Ins. Co. v. Richard Marker Assocs., Inc., 289 Ill. App. 3d 819, 822 (2d Dist. 1997) ("[CGL] policies are intended to provide coverage for injury or damage to the person or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses."); Qualls v. Country Mut. Ins. Co., 123 Ill. App. 3d 831, 833–34 (4th Dist. 1984) ("Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond.").

In the Underlying Action, Davis Russell claimed it incurred $42,000 in damages due to water damage and $223,625 in damages for labor and materials that were necessary to complete the project after Tripar abandoned it, as well as lost rent. Davis Russell pursued, and ultimately obtained a judgment for, these damages under a breach of contract and fraud theory. In its complaint in the underlying action, Davis Russell claimed that Tripar breached the PSA in the following ways:

> (a) it failed to provide adequate staff and materials on site to complete the project;
> (b) it negligently failed to complete the roof when the weather permitted and, thereby leaving the roof uncompleted [sic]. As a result, the roof continues to deteriorate and pose a danger to the tenants. The deteriorating roof is causing deterioration to the entire building and making the units unrentable.
> (c) it made material misrepresentations as to its financial capability to sustain and complete the project when it knew or should have known that it did not have the financial resources to embark on the project.
> (d) it failed to pay the subcontractors that it hired for the job, thereby leading to the subcontractors' abandonment of the project;
> (e) if [sic] failed to reimburse [Davis Russell] for the payment of materials and labor when it had requested [Davis Russell] to do so because of its own incapability to fund the costs of the materials and labor; and

(f) it refused to execute the reimbursement papers to release the bank funds to [Davis Russell].

Although Davis Russell alleged property damage in paragraph (b), its allegations do not constitute property damage under the Tripar Policy. Regardless of how Davis Russell describes the property damage, "the definition [of property damage] does not include breach of contract claims, because such claims are not the result of fortuitous events." Stoneridge Dev. Co., Inc. v. Essex Ins. Co., 382 Ill. App. 3d 731, 752 (2d Dist. 2008). Consequently, Davis Russell has failed to prove either an "occurrence" or "property damage" and cannot meet its burden of proving that its loss is covered by the Tripar Policy.

Moreover, even if the Underlying Action could be construed to allege an occurrence and property damage, plaintiff was not notified of the lawsuit as required by the Tripar Policy. Davis Russell filed its complaint against Tripar on April 26, 2013. After answering the complaint Tripar did virtually nothing to defend itself. It did not even bother to respond to Davis Russell's May 9, 2014, motion for summary judgment, which was granted three days later at a status conference. Throughout all of this, neither Tripar nor Davis Russell notified plaintiff of the lawsuit despite the fact that plaintiff was investigating Davis Russell's claim and, in doing so, met with representatives from both Davis Russell and Tripar. Tripar did not give notice to plaintiff of the Underlying Action until November 3, 2014, well after summary judgment had been issued against it.

The Tripar Policy required Tripar to notify plaintiff of a lawsuit against it "as soon as practicable." Under Illinois law, "as soon as practicable" has been held to mean that the insured must provide the insurer notice within a reasonable time. Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc., 313 Ill. App. 3d 457, 464 (1st Dist. 2000). Courts often look at: (1) the

specific language of the policy notice provision; (2) the insured's sophistication in commerce and insurance matters; (3) the insured's awareness of an event that may trigger insurance coverage; (4) the insured's diligence in ascertaining whether policy coverage is available; and (5) prejudice to the insurer, to determine if notice has been given within a reasonable time. Country Mut. Ins. Co. v. Livorsi Marine, Inc., 222 Ill.2d 303, 313 (2006).

In the instant case, all of these factors favor plaintiff. The Tripar Policy clearly and unambiguously required notice of a "suit" as soon as practicable. As a corporation doing business in the construction industry that was represented by counsel in the Underlying Action, Tripar understood that it had an obligation to notify plaintiff when a lawsuit was filed against it, yet it failed to do so for more than eighteen months after Davis Russell filed its complaint. Delays of as little as three months have been held to be unreasonable. See INA Ins. Co. of Illinois v. City of Chicago, 62 Ill. App. 3d 80, 83 (1st Dist. 1978) (three months); Northbrook Prop., 313 Ill. App. 3d at 464 (17 months); Equity Gen. Ins. Co. v. Patis, 119 Ill. App. 3d 232, 235 (1st Dist. 1983) (five months). Additionally, plaintiff was clearly prejudiced by the fact that it was denied any opportunity to defend its insured against liability in the Underlying Action. Under the instant circumstances, the court concludes that Tripar's eighteen month delay in reporting the Underlying Action was unreasonable.

B.   **Plaintiff's Duty to Reimburse Davis Russell as an "Additional Insured"**

In its opposition to plaintiff's motion for summary judgment, Davis Russell acknowledges that, for the reasons outlined above, plaintiff may be entitled to judgment against Tripar. Davis Russell argues that such judgment does not foreclose recovery by Davis Russell

11

for the damages stemming from the three "occurrences," of which plaintiff had ample notice.[2] According to Davis Russell, it is "undisputed" that there was an occurrence, as defined by the Tripar Policy, and, as an "additional insured," Davis Russell is entitled to indemnification for sums it was legally obligated to pay. Davis Russell is mistaken on both grounds.

First, it is not at all undisputed that there was an occurrence, as defined by the Tripar Policy. Indeed, as explained above, Davis Russell has failed to prove that its loss was the result of an occurrence. Water damage is the natural and ordinary consequence of improperly securing a roof against impending rain. Deterioration of a roof is the natural and ordinary consequence of a contractor abandoning a project. The alleged damage is therefore not the result of an occurrence under Illinois law. Nautilus Ins. Co., 2012 WL 1156917 at *4.

Additionally, Davis Russell's counterclaim seeks recovery for structural damage alone. To qualify as an occurrence, "there must be 'damage to other materials not furnished by the insured.'" CMK Dev. Corp. v. W. Bend Mut. Ins. Co., 395 Ill. App. 3d 830, 842 (1st Dist. 2009) (quoting Richard Marker, 289 Ill. App. 3d at 822)). Because the alleged damage is to and the recovery sought is for repair to materials furnished by Tripar, there is no occurrence alleged and no coverage under the Tripar Policy. "Illinois courts require that for an incident to constitute an 'occurrence' or 'accident' in the building construction context, there must be damage to something other than the structure, *i.e.*, the building, in order for coverage to exist." Nautilus Ins. Co. v. Bd. Of Directors of Regal Lofts Condo Ass'n, 764 F.3d 726, 732 (7th Cir. 2014) (quotation omitted). Plaintiff points out, and Davis Russell does not dispute, that the alleged

---

[2] The parties agree that plaintiff was notified regarding Davis Russell's claim on September 17, 2013.

12

damages were to the apartment building itself, nothing more. Such damage "is clearly not an 'occurrence' under Illinois law." Id.

Second, it is not, as Davis Russell maintains, "clear" that it is an "additional insured" under the Tripar Policy. But assuming it is, and further assuming that an "occurrence" took place, the alleged damages would not be covered for at least two reasons. First, the policy contains the following exclusion:

> "Property damage" to:
> (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property"

Because Davis Russell owns the property, any damage it sustained would not be covered under a commercial general *liability* policy. "Such policies are intended to protect the insured from liability for injury or damage to the persons or property of others." Amerisure Mut. Ins. Co. v. Microplastics, Inc., 622 F.3d 806, 811 (7th Cir. 2010).

The Tripar Policy is unambiguously a liability policy, providing that, "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Davis Russell attempts to avoid this reality by arguing that the Chicago Municipal Building Code legally obligated Davis Russell to pay for repairs to the building. Davis Russell cites to no legal authority to support this proposition. Instead, Davis Russell confusingly cites Douglas v. Allied Am. Ins., 312 Ill. App. 3d 535, 540 (5th Dist. 2000), for the principle that "in a lawsuit one does not become 'legally obligated' until a judgment or settlement is reached." According to Davis Russell, it follows that a legal obligation to pay can arise outside of a lawsuit because the courts have not explicitly held

13

that it cannot. This interpretation strains credulity, particularly where the case cited found that the plain meaning of "legally obligated" "suggests an obligation due to judgment or settlement." Id.

Further, as plaintiff points out, Davis Russell has conveniently omitted from its argument the words "as damages." As the party claiming damages, Davis Russell cannot, and does not, argue that it has paid one cent in damages to another party. Davis Russell instead argues, circularly, that its damages flow from an occurrence, and are therefore covered by the Tripar Policy. Such conclusory statements do nothing to support Davis Russell's erroneous interpretation of the coverage provided by the Tripar Policy. Given that Davis Russell has not met its burden to establish that its damages resulted from an "occurrence," and the policy unambiguously excludes coverage of the alleged damages even if Davis Russell is an "additional insured," no reasonable jury could find in favor or Davis Russell.

## CONCLUSION

For the reasons set forth above, the court grants plaintiff's motion for summary judgment, denies Davis Russell's motion for summary judgment and declares that, (a) plaintiff has no duty to indemnify Tripar in the Underlying Action, and (b) plaintiff is not liable to Davis Russell under the Tripar Policy.

**ENTER:** **January 6, 2017**

_____
**Robert W. Gettleman**
**United States District Judge**